IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARQUISE FIGURES,

        Plaintiff,

v.                                          **Case No. 3:19-cv-00728**

CHAD HALE;
VANCE KEATON, Booking Officer,

        Defendants.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

In October 2019, Plaintiff, Marquise Figures ("Figures"), proceeding *pro se* filed a Complaint pursuant to 42 U.S.C. § 1983. (ECF No. 2). Pending before the court are Defendants' Motions to Dismiss the Complaint. (ECF Nos. 20, 24). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

As explained below, the undersigned **FINDS** that the complaint, in part, states claims that are sufficient to survive Defendants' initial dispositive motions. Accordingly, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the following findings and **RECOMMENDS** that Defendants' motions for dismissal, (ECF Nos. 20, 24), be **GRANTED**, in part, and **DENIED**, in part. The motions for dismissal should be **GRANTED** as to Plaintiff's

claims for monetary damages against the Defendants in their official capacity, and **DENIED** as to Plaintiff's remaining claims.

## I.    <u>Relevant Facts and Procedural History</u>

On October 7, 2019, Figures filed the complaint herein, alleging that correctional officers employed at the Western Regional Jail and Correctional Facility ("WRJ") used unconstitutionally excessive force. (ECF No. 2 at 1). Figures asserts that on April 2, 2019, he awoke to another inmate informing him that a correctional officer had given Figures's Personal Identification Number ("PIN") to the inmate with instructions that the inmate relay the PIN to Figures when he awoke. (*Id.* at 4). Believing that it was improper for the correctional officer to give Figures's personal information to another inmate, Figures knocked on his cell door and asked to speak with a correctional officer. (*Id.*). Correctional Officer Vance Keaton ("Keaton") arrived and asked Figures to step out of the cell. (*Id.*). When Figures complied, Keaton angrily asked Figures why he was knocking on the door. Figures stated that another inmate knew his PIN and asked if he could get a new one. Keaton became angrier and directed Figures to go into a "cage." (*Id.*). Figures asked Keaton: "[W]hy would you make me go in that cage like I did something wrong as if I'm a dog," but nonetheless Figures began to comply with the directive. (*Id.* at 1-2).

Correctional Officer Chad Hale ("Hale") then approached Figures from behind and grabbed Figures by the legs, picked him up, and threw him, headfirst, to the ground. (*Id.* at 5). The blow to his head rendered Figures unconscious. When Figures regained consciousness, he was in handcuffs with Hale pushing his head to the ground. Figures was ordered to "stop resisting," although he was not. Hale and Keaton then picked Figures up while "cursing" at him. Figures states that the shackles they had

placed on his ankles were too tight to allow him to stand. (*Id.*).

Figures explains that following the incident, he was examined by a nurse, Lydia McNeely, who told him: "if I was you, I would sue him cause all that was uncalled for." (*Id.* at 6). Ms. McNeely further told Figures that this was not the first such incident in which one of the correctional officers involved used excessive force, and she believed he should be "fined" for his actions.[1] (ECF No. 2 at 6). Figures asserts that another correctional officer, "c/o Atkins," also witnessed the incident, but Figures is unsure if Atkins's account of the events would be truthful, because during the assault, she was "laughing and making fun of what happen[ed]" and she gives Figures "a hard time almost every time she see[s] [him]." (*Id.*). Finally, Figures provides the name and contact information for another witness, an inmate who observed the incident. (*Id.*). Figures also asserts that the incident took place in a crowded area with video surveillance and that videotape evidence, if obtained, would corroborate his version of events. (*Id.*).

For relief, Figures asks that Defendants be "punished" for their "unprofessional and unappreciated actions," and asserts that the officers should be fired because their anger control issues make them unsuited for employment as correctional officers. (*Id.* at 5). Figures seeks $75,000 for the "mental anguish, pain, and headache/memory problem I'm dealing with." (*Id.*). Figures adds that the incident has left him wary of prison staff, and with a "permanent knot in the back of [his] head." (*Id.*). Figures states that he attempted to utilize the grievance procedure in place at the WRJ by talking to Mr. Aldridge, who said he was unable to help, prompting Figures to file a grievance.

---

[1] It is not clear here if Figures if referring to Keaton or Hale.

Figures alleges that in response to the grievance "they said they was gone [sic] look into it," but Figures never received a response. (*Id.* at 3). Figures states that he attempted to obtain an attorney to represent him, but was thwarted by prison staff members' refusal to give him necessary "paperwork." (*Id.* at 7).

Figures submitted an application to proceed without prepayment of fees or costs contemporaneously with his complaint. (ECF No. 1). On October 8, 2019, the undersigned entered an Order granting Figures's application. (ECF No. 4). The undersigned noted that Figures had sufficient funds in his inmate account to make an initial partial payment of $40, and ordered him to do so on or before November 15, 2019, with monthly payments to be made thereafter until the full filing fee of $350 was satisfied. (*Id.* at 1). The Clerk of Court was ordered to issue a summons for the named defendants upon receipt of the initial partial filing fee. (*Id.* at 2). On October 15, 2019, Figures submitted the $40 initial partial filing fee. (ECF No. 6). A second partial filing fee of $ 149.04 was received on November 14, 2019. (ECF No. 7).

On November 20, 2019, Figures submitted a letter to the Clerk of Court inquiring as to the status of his complaint. (ECF No. 8). Figures noted that he had paid the required initial filing fee and was continuing to make required payments and asked if this meant his case was going to "move forward." (*Id.* at 1). Figures also sought advice regarding how to add new claims or open a new case under § 1983. (*Id.*). On November 25, 2019, the Clerk of Court issued summons for Defendants and provided them to the United States Marshals Service for service. (ECF Nos. 10, 11). The Clerk of Court additionally sent Figures a letter informing him that the Clerk was unable to provide legal advice. (ECF No. 11 at 1). Figures submitted a partial filing fee of $125.70 on December 9, 2019,  and a payment of $35.26 on January 8, 2020, completing his

obligation to pay the filing fee of $350. (ECF Nos. 12, 13).

On January 9, 2020, the U.S. Marshals Service returned the summons as to Hale unexecuted. The form noted that Hale was no longer employed by the WRJ. (ECF No. 14 at 1). On January 10, 2020, the undersigned entered an Order directing the WRJ to provide the last known address for Hale. (ECF No. 15). On January 14, 2020, after receiving Hale's last known address from the WRJ via a telephone call, a summons for Hale was reissued by the Clerk of Court. (ECF No. 17).

Also on January 14, 2020, the summons for Keaton was returned executed by the U.S. Marshals Service. (ECF No. 19). On February 4, 2020, Keaton submitted a Motion to Dismiss Complaint and a Memorandum of Law in support. (ECF Nos. 20, 21). Keaton contends first that the complaint should be dismissed as it was served outside of the 90-day time period mandated by law. (ECF No. 21 at 3). Next, Keaton argues that to the extent the complaint asserts claims against him in his official capacity, they must be dismissed due to sovereign immunity. (*Id*. at 4-5).

Keaton additionally states that the complaint is subject to the qualified immunity bar, entitling him to dismissal of claims which are asserted against him in his personal capacity. (*Id*. at 5). In support of this contention, Keaton describes an April 2, 2019 encounter between Figures, himself, and Hale, that differs in crucial respects from the events described by Figures in his complaint. (*Id*. at 2). Keaton states that he observed Figures trying to kick open his cell door "in violation of the Rules of Conduct, including Rule 1.1, Tampering with Locks or Doors, and Rule 2.30, Creating a Disturbance." (*Id*.). Hale approached Figures's cell and witnessed him threaten another inmate. Hale then opened Figures's cell door and instructed him to enter a temporary holding cell. When Figures refused, Hale "moved toward [Figures], grabbed

his right arm with his left arm and reached his right arm around [Figures's] back to pull him into the holding cell." (*Id.*). Figures then attempted to strike Hale on the head and missed, instead hitting him on his shoulder. Hale attempted to "place" Figures on the ground as Figures continued to resist. Keaton assisted Hale, and the two managed to restrain Figures and place shackles on his wrists and ankles. (*Id.*).

Figures was brought to be examined by a nurse following the struggle and then placed in a temporary holding cell. (ECF No. 21 at 2). Keaton asserts that incident reports prepared by Hale and Keaton, as well as videotape surveillance of the encounter, confirm his description of events and reveal that the force used was proportional to the threat presented. (*Id.* 2, 6). However, this supporting evidence was not provided to the Court. Lastly, Keaton argues that the complaint should be dismissed as Figures failed to exhaust his administrative remedies. (*Id.* at 10). Keaton indicates that Figures's complaint "wholly fails to establish that he complied with the grievance procedures" in place at the WRJ, as he admits that he did not appeal the grievance he purportedly submitted. (*Id.* at 9).

On February 7, 2020, the summons as to Hale was returned executed by the U.S. Marshals Service. (ECF No. 23). On February 20, 2020, Hale submitted a Motion to Dismiss Complaint and a Memorandum of Law in support. (ECF Nos. 24, 25). Hale contends that the complaint should be dismissed for the same reasons as those asserted by Keaton. (ECF No. 25). Although the undersigned entered orders informing Figures that he had a right to respond in opposition to the motions to dismiss, and that the failure to do so could "support a conclusion that Defendant[s'] contentions are undisputed and may result in a dismissal of the complaint," Figures did not submit a response to the motions to dismiss. (ECF Nos. 22, 26 at 1).

## II.    <u>Standard of Review</u>

Defendants' request that Figures's complaint be dismissed under Rule 12(b)(6). A motion under this rule tests the sufficiency of the complaint. *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (stating to survive a 12(b)(6) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face"). Accordingly, the Court will assume that the facts alleged in the complaint are true and will draw all reasonable inferences in Figures's favor as the nonmoving party. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002). Because the purpose of Rule 12(b)(6) is limited to assessing the adequacy of a complaint, the court is not "to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation omitted). Furthermore, when a Rule 12(b)(6) motion challenges a civil rights complaint, "'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged.*'" *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir. 1988)).

While the Court "take[s] the facts in the light most favorable to the plaintiff, ... [the Court] need not accept the legal conclusions drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)). A complaint fails to state a claim when, accepting the plaintiff's well-pleaded allegations as true and

drawing all reasonable inferences, the complaint lacks "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A pleading that "offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do" and a complaint will not "suffice if it tenders naked assertions devoid of further factual enhancements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

Court are required to liberally construe *pro se* complaints, such as the complaint filed herein. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). The Court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

## III.    Discussion

Figures's complaint is filed pursuant to 42 U.S.C. § 1983, which provides a remedy to parties who are deprived of federally protected civil and constitutional rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." 42 U.S.C. § 1983. Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a state and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape*, 365 U.S. 167, 171-72 (1961), *overruled on other grounds by* 436 U.S. 658.

In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a person deprived him or her of a federally protected civil right, privilege or immunity and (2) that the person did so under color of state law. 42 U.S.C. § 1983; *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) ("To state a claim for relief in an action brought under § 1983, respondents must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."). If either of these elements is missing, the complaint fails to state a claim for relief under § 1983. *Sullivan,* 526 U.S. at 50.

## A. Failure to timely serve

Both Defendants assert that the complaint should be dismissed as they were not served within the 90-day deadline contained in the Federal Rules of Civil Procedure. (ECF Nos. 21, 25 at 3).[2] Service was returned executed as to Keaton on January 14, 2019, and on February 7, 2020 with respect to Hale. (ECF Nos. 19, 23). Both Keaton and Hale assert that this delay can be partially attributed to Figures's failure to pay the required partial initial filing fee until November 14, 2019, over a month after the order directing him to do so. (ECF Nos. 21, 25 at 4).

Federal Rule of Civil Procedure 4(e) sets forth the appropriate methods for serving an individual within a judicial district of the United States. The rule provides four ways to sufficiently accomplish service: (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; (2) "delivering a copy of the

---

[2] While Defendants bring their motions to dismiss under Rule 12(b)(6), a motion to dismiss for improper service should be brought under Rule 12(b)(5). *See* Fed. R. Civ. P. 12(b)(5).

summons and of the complaint to the individual personally"; (3) "leaving a copy of each [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (4) "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). According to Federal Rule 4(c), when a plaintiff is authorized to proceed *in forma pauperis* under 28 U.S.C. 1915 (as in the instant action), the court must order the U.S. Marshal or Deputy Marshal to serve the summons and complaint.

Rule 4(m) provides that service must be perfected within 90-days of the filing of the complaint or "the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specific time." Fed. R. Civ. P. 4(m). Rule 4(m) goes on to state that "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id*. As referenced in Rule 4(m), a defendant may bring a motion pursuant to Federal Rule of Civil Procedure 12(b)(5) requesting that he be dismissed from the action for insufficient service of process. "When sufficiency of service is raised as a defense under Rule of Civil Procedure 12(b)(5), the plaintiff has the burden of establishing that service of process has been effectuated in conformity with Rule 4." *Rowe v. Clark*, No. 3:04-0681, 2011 WL 4345685, at *7 (S.D.W.Va. Aug. 19, 2011), *report and recommendation adopted*, 2011 WL 4345678 (S.D.W.Va. Sept. 15, 2011).

In this case, the Clerk of Court did not immediately issue the summonses upon receipt of the initial partial filing fee, as ordered by the Court; instead, the Clerk did not issue the summonses until 41 days after payment was received. (ECF Nos. 6, 9, 10). When the summonses were issued, the U.S. Marshals Service served the summons and

complaint upon each Defendant by delivering the documents to the WRJ. However, Hale's summons was returned unexecuted on January 9, 2020, because Hale was no longer an employee of the WRJ. (ECF No. 14). The summons for Hale was reissued on January 14, 2020, following the receipt of Hale's last known address provided by the WRJ, but service was not completed by the U.S. Marshals Service until February 7, 2020, three weeks later. (ECF No. 23). With regard to Keaton, proof of service was returned executed, but revealed that service was not effected by the U.S. Marshals Service until more than thirty days after the summons was issued. (ECF No. 19). Therefore, as the complaint was docketed on October 7, 2019, (ECF No. 2), Keaton was served 99 days after the filing of the complaint, and Hale was served 123 days after the filing of the complaint.

While Defendants were served outside of the 90-day deadline provided by Rule 4(m), Figures, as an incarcerated individual proceeding *pro se* and *in forma pauperis*, was entitled to rely on officers of the court to issue and serve summons. *See* 28 U.S.C. § 1915(d). This Court has previously granted extensions for good cause when a delay in service was attributable to the U.S. Marshals Service rather than the plaintiff. *See Cruse v. Talbot*, No. 3:15-CV-03872, 2016 WL 1084272, at *2 (S.D.W. Va. Feb. 29, 2016), *report and recommendation adopted*, No. CV 3:15-3872, 2016 WL 1090617 (S.D.W. Va. Mar. 18, 2016); *Jordan-El v. White*, No. 3:16-CV-04328, 2016 WL 6514163, at *4 (S.D.W. Va. Oct. 7, 2016), *report and recommendation adopted*, No. CV 3:16-4328, 2016 WL 6462085 (S.D.W. Va. Oct. 31, 2016) (denying motion to dismiss for untimely service where "the early delay was due to procedural issues, and the subsequent error in effecting service was made by the U.S. Marshals Service"); *see also Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir.1994), *overruled on other grounds by Sandin v.*

*Conner*, 515 U.S. 472 (1995) ("So long as the prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service of process is automatically good cause within the meaning of [federal rules governing service].") (quotation omitted).

Defendants point to an alleged failure by Figures to timely pay the required partial filing fee as a basis to attribute the delay to Figures, rather than court officers. (ECF Nos. 21, 25 at 4). Defendants' position is without merit, because it is factually incorrect. On October 8, 2019, the undersigned granted Figures's application to proceed without prepayment of fees or costs, ordered him to pay an initial partial filing fee of $40, and directed the Clerk of Court to issue summons upon receipt of the initial partial filing fee. (ECF No. 4). Figures submitted the partial filing fee on October 15, 2019, a mere seven days after the order was entered and well in advance of the deadline given. (ECF No. 6). The November 14, 2019 payment referred to by Defendants was not the initial payment necessary for summons to issue, as Figures had already submitted that payment. Consequently, as Figures fully complied with the Court's order, there is no basis to hold Figures liable for the delay in service.

Given that the Clerk of Court was responsible for issuing the summonses and the U.S. Marshals Service was charged with effecting service of process, any delay in the perfection of service cannot be ascribed to Figures. Accordingly, the undersigned **FINDS** good cause for extending the time limit for service as to both Defendants to the date on which they were properly served. As good cause for the delay exists, the undersigned further **FINDS** that Defendants' motions for dismissal on the basis of untimely service are unavailing and should be denied.

### B. Failure to exhaust

Defendants both assert that the complaint should be dismissed as Figures failed to properly exhaust his administrative remedies. (ECF Nos. 21, 25 at 6-7). Figures asserts that he filed a grievance related to the incident involving Hale and Keaton but "never got a response." (ECF No. 2 at 3). Defendants assert, by contrast, that Figures "did not ever file a grievance regarding this alleged incident," and that he has "blatantly lied to this Court," by asserting that he did. (ECF No. 21 at 9 n.1). Neither party provides documents detailing Figures's administrative remedial history.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies prior to filing a complaint in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle,* 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory. All available remedies must now be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective. Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit.") (citations and internal quotation marks omitted). The purpose of the exhaustion requirement is twofold: first, "exhaustion protects administrative agency authority" by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court … and it discourages disregard of the agency's procedures;" second, "exhaustion promotes efficiency," as claims "generally can be resolved much more quickly and economically

in proceedings before an agency than in litigation in federal court" and sometimes "claims are settled at the administrative level, and in others, the proceedings before the agency convince the losing party not to pursue the matter in federal court." *Woodford v. Ngo*, 548 U.S. 81, 89, (2006) (citations and internal quotation marks omitted). Further, "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.*

In *Ross v. Blake*, the Supreme Court of the United States ("Supreme Court") considered a case in which a Maryland state inmate filed a § 1983 complaint alleging that a correctional officer used excessive force against him and that another officer failed to take action to protect him. *Ross*, 136 S. Ct. 1850, 1855 (2016). One of the officers raised the PLRA's exhaustion requirement as an affirmative defense, stating that the inmate brought suit without first following the prison's prescribed procedures for obtaining an administrative remedy. *Id.* The district court dismissed the lawsuit for lack of exhaustion, but the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") reversed the decision, stating that the PLRA's exhaustion requirement was "not absolute" and special circumstances could excuse exhaustion, such as when a prisoner reasonably, but mistakenly, believed that he had sufficiently exhausted his administrative remedies. *Id.* at 1856. Upon review, the Supreme Court explicitly rejected the Fourth Circuit's "special circumstances" exception, noting the exhaustion requirement in the PLRA is statutorily mandated and not amenable to judicially created exceptions. *Id.* The Supreme Court explained that the mandatory language of the PLRA meant that a court may not excuse a failure to exhaust, even to take special circumstances into account. *Id.*

14

Yet, the Supreme Court pointed out in *Ross* that the PLRA does contain one express exception: an inmate need not exhaust "unavailable" remedies. *Id.* at 1858. The Court identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide relief to aggrieved inmates." *Id.* Second, an administrative process is likewise unavailable when it is "so opaque" that "no ordinary prisoner can discern or navigate it." *Id.* Finally, an inmate need not exhaust administrative remedies when prison officials thwart the inmate's access to the grievance procedure "through machination, misrepresentation, or intimidation." *Id.* at 1860. "[S]uch interference with an inmate's pursuit of relief renders the administrative process unavailable." *Id.*

Figures takes issue with events that occurred while he was incarcerated in a West Virginia regional jail. Consequently, he was also required to exhaust his administrative remedies in accordance with the West Virginia Prisoner Litigation Reform Act, W. Va. Code § 25-1A-1, *et seq.*, before filing this federal lawsuit. Even if West Virginia law provides exceptions to the state's exhaustion requirement that are not offered under the PLRA, the federal exhaustion requirements govern this action. Therefore, Figures must have exhausted the state's administrative remedies unless they were unavailable to him. *Freeland v. Ballard*, No. 2:14-CV-29445, 2017 WL 337997, at *3 (S.D.W. Va. Jan. 23, 2017) (collecting cases).

For West Virginia state inmates, exhaustion of administrative remedies for claims which take issue with conduct of prison employees requires a final decision from

"the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee." W. Va. Code § 25-1A-2. As stated, exhaustion of remedies is mandatory and has limited exception. *Porter,* 534 U.S. at 524. While Defendants' assertion that Figures did not exhaust his administrative remedies may ultimately be demonstrated, at this early stage of litigation, neither party has had an opportunity to develop and produce evidence determinative of the exhaustion issue. Based on the limited record before the Court, and Figures's claim that he submitted a grievance form in compliance with the administrative process that was available to him but did not receive a response, it would be premature to dismiss the complaint for failure to exhaust administrative remedies. *See Custis v. Davis*, 851 F.3d 358, 361–62 (4th Cir. 2017) (discussing that it is a rare, exceptional instance where administrative exhaustion is apparent on the complaint's face and noting that the inmate's statement that he attempted to exhaust his administrative remedies "may equally imply that he attempted, but could not, exhaust his administrative remedies—and thus, that he exhausted all remedies that were available to him."); *see also Spradlin v. Rodes*, No. 3:16-CV-06986, 2017 WL 4277150, at *3 (S.D.W. Va. Aug. 31, 2017), *report and recommendation adopted,* No. CV 3:16-6986, 2017 WL 4248849 (S.D.W. Va. Sept. 25, 2017) (same); *White v. Van Duncan*, No. 1:10-cv-014, 2010 WL 2813492, at *2 (W.D.N.C. July 15, 2010) (finding that, based on the limited record and viewing the allegations in the light most favorable to the plaintiff, the plaintiff attempted to utilize the administrative grievance procedure and his grievances were ignored and it would be improper to dismiss the complaint for failure to exhaust, as the issue could be raised later in a motion for summary judgment); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 5815882, at *2

16

(D. Md. Oct. 5, 2016) ("The practical availability of remedies is not a pure question of law. As the Supreme Court noted when remanding *Ross v. Blake*, determining whether administrative remedies are truly available requires development of a record of facts and evidence relating to whether the administrative process operated as a dead end, whether it was knowable by an ordinary prisoner, and whether officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentation.") (citations omitted). Therefore, the undersigned **FINDS** that Defendants' motion to dismiss on the ground of lack of exhaustion is premature and should be denied.

### C. Official Capacity Immunity

Defendants contend that Figures's claims against them in their official capacities are barred by the Eleventh Amendment to the United States Constitution ("Eleventh Amendment"). (ECF Nos. 21, 25 at 4). In *Will v. Mich. Dept. of State Police,* the Supreme Court considered "the question whether a State, or an official of the State while acting in his or her official capacity, is a 'person' within the meaning of Rev. Stat. § 1979, 42 U.S.C. § 1983." *Id.*, 491 U.S. 58, 60 (1989). Examining the language and purpose of the statute, the Supreme Court concluded that Congress never intended to subject States to liability for deprivations of civil liberties when such suits would have otherwise been barred by the States' sovereign immunity. *Id.* at 66. The Court further held that a State's officials "acting in their official capacities" were not "persons" under § 1983, explaining: "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official; rather, it is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* at 71 (citations omitted).

The Court later clarified its holding in *Will,* making a distinction between officials acting in their official capacities and officials acting in their personal capacities under color of state law. *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985); *see also Hafer v. Melo,* 502 U.S. 21 (1991). The Court indicated that because the real party in interest in an "official-capacity" suit is the governmental entity, rather than the named official, the target of such a claim is the entity's "policy or custom." *Hafer,* 502 U.S. at 25 (citing *Graham,* 473 U.S. at 166). "Personal-capacity suits, on the other hand, seek to impose individual liability upon a government officer for actions taken under color of state law." *Id.*

The significance of this distinction is key to the viability of a § 1983 complaint against a state official. As a general proposition, the doctrine of sovereign immunity bars suit against a State. *Will,* 491 U.S. at 67. By extension, sovereign immunity precludes claims for money damages against state officials acting in their official capacities, including claims brought pursuant to § 1983. *Id.* at 71. In contrast, a suit for money damages brought against a state official, who acted in his personal capacity under color of state law, is not barred by the doctrine of sovereign immunity. *Hafer,* 502 U.S. 30. Instead, a state official sued in his personal capacity under § 1983 must rely upon "personal immunities," such as qualified immunity, to bar suit. *Id.* at 31.

The determination of whether a defendant has been named in his official or personal capacity is generally made by examining "the face of the complaint." *Amos v. Maryland Dep't of Pub. Safety & Corr. Servs.,* 126 F.3d 589, 609 (4th Cir. 1997), *vacated on other grounds by* 524 U.S. 935 (1998). "[A] plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." *Biggs v. Meadows,* 66 F.3d 56, 60 (4th Cir. 1995). However, "[w]hen a

plaintiff does not allege capacity explicitly, the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." *Id.* at 61. In *Foreman v. Griffith*, the Fourth Circuit discussed the significance of the factors outlined in *Biggs*:

> With respect to assessing the nature of a plaintiff's claim or claims, the *Biggs* court stated that the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom or the lack of indicia of such a policy or custom on the face of the complaint indicates that a state actor has been sued in his individual capacity. With respect to the nature of the relief sought, the *Biggs* court also stated that the plaintiff's request for compensatory or punitive damages indicates an individual capacity suit since such relief is unavailable in official capacity suits. Finally, with respect to the course of proceedings, the *Biggs* court stated that the defendant's assertion of qualified immunity as a defense indicates an individual capacity suit, since such a defense is only available in individual capacity suits.

81 Fed. App'x 432, 435 (4th Cir. 2003). Ultimately, "the underlying inquiry remains whether the [p]laintiff's intention to hold a defendant personally liable can be ascertained fairly." *Biggs*, 66 F.3d at 61.

Figures does not specify whether he sues Defendants in their official or personal capacities. (ECF No. 2). Consequently, the undersigned must review the amended complaint and make a fair determination. Figures does not allege that Defendants acted in accordance with official policy in using excessive force against him, instead his complaint alleges that Defendants personally deployed unconstitutionally excessive force. Figures primarily seeks monetary damages, which is unavailable in an official capacity suit; however, he also makes a request for equitable relief, asking that Defendants be "fired." (ECF No. 2 at 5). The factors, taken together, suggest that Figures intended to sue Defendants in their personal capacities. Nevertheless, to the extent that Figures seeks money damages from Defendants for acts done in their

official capacities, the undersigned **FINDS** that Defendants are not "persons" liable for money damages under § 1983; instead, they are arms of the State of West Virginia entitled to Eleventh Amendment immunity. Therefore, the undersigned respectfully **RECOMMENDS** that Figures's monetary claims against Defendants *in their official capacities only* be dismissed.

### D. Qualified Immunity

Defendants assert that, to the extent Figures brings claims against them in their personal capacities, they are entitled to qualified immunity as they were "required to use [their] discretionary judgment in order to properly control [Figures] and prevent him from causing harm to himself, an officer, or another inmate." (ECF Nos. 21, 25 at 6). Defendants assert that while they "did utilize physical force against [Figures] on April 2, 2019, such force was neither excessive nor arbitrary, but rather was necessary under the circumstances." (*Id.* at 1). Because Defendants used their discretionary judgment, they contend, "the decisions made" during the incident "cannot subject [them] to liability, regardless of any negligence or an erroneous decision." (*Id.* at 6).

Government officials performing discretionary functions may be protected from monetary damages under the doctrine of qualified immunity when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity "is a judicially created doctrine that stems from the conclusion that few individuals will enter public service if such service entails the risk of personal liability for one's official decisions." *Donovan v. City of Milwaukee,* 17 F.3d 944, 947 (7th Cir. 1994). This doctrine protects law enforcement officers in the exercise of their official duties from the risk of personal liability for making "bad guesses in gray areas,"

ensuring that they are only responsible for "transgressing bright lines." *Marciariello v. Sumner,* 973 F.2d 295, 298 (4th Cir. 1992). As the United States Supreme Court explained in *Pearson v. Callahan:*

> Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez,* 540 U.S. 551, 567 (2004)). Because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is "effectively lost if a case is erroneously permitted to go to trial." *Id.* (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Saucier v. Katz,* 533 U.S. 194, 200 (2001).

In determining the applicability of qualified immunity, the court must consider two questions: (1) whether a constitutional or statutory right would have been violated on the facts alleged by plaintiff, and (2) whether the right asserted was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232. These questions may be answered in any order that "[would] best facilitate a fair and efficient disposition of each case." *Id.* at 242. As such, if a court finds that a claimed constitutional right was not clearly established at the time of the alleged wrongdoing, the court may dispose of the case without engaging in the pointless exercise of determining whether the facts alleged actually establish a violation of that right. *Id.* Similarly, if a court determines that the facts alleged by the plaintiff do not support a

21

reasonable inference that a constitutional right was violated, the analysis terminates, and the complaint is subject to dismissal for failure to state a claim.

"[A] defendant can raise the qualified-immunity defense at both the motion to dismiss and summary judgment stage." *Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8 (E.D. Va. 2013) (citing *Tobey v. Jones,* 706 F.3d 379, 393–94 (4th Cir. 2013). "So long as qualified immunity does not turn on *disputed facts,* 'whether the officer's actions were reasonable is a question of pure law.'" *Id.*  (citing *Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011) (*en banc* )). However, in many cases, "immunity is peculiarly well-suited for resolution at the summary judgment stage." *Id.*  (citing *Willingham v. Crooke,* 412 F.3d 553, 558–59 (4th Cir. 2005)).

Here, Defendants are not entitled to dismissal based on qualified immunity as their argument for dismissal relies on disputed facts.[3] While Figures does not explicitly state under what provision of the constitution, or pursuant to what federal law he brings this claim, it is clear that his complaint alleges the Defendants used excessive force against him. (ECF No. 2 at 4). It is not apparent from the face of the complaint whether, at the time of the incident, Figures was convicted of a crime or was being held as a pretrial detainee. As a pretrial detainee, Figures's complaint would allege a violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution ("Fourteenth Amendment"), while as a convict he would allege a violation

---

[3] Although Figures did not respond to Defendants' motions to dismiss, this Court retains "'an independent duty to examine the merits of that motion.'" *Rose v. Kanawha Cty. Bd. of Educ.*, No. 2:15-CV-02473, 2016 WL 1229112, at *3 n.2 (S.D.W. Va. Mar. 28, 2016) (quoting *Acey v. Bob Evans Farms, Inc.*, Civil Action No. 2:13-cv-04916, 2014 WL 989201, at *2 (S.D. W. Va. Mar. 13, 2014)). "Where a plaintiff fails to respond to a motion to dismiss within the time period set forth by the applicable procedural rules, a court may rule on the motion to dismiss 'on the uncontroverted bases asserted therein.'" *Hager v. Star Transp., Inc.*, Civil Action No. 2:11–cv–00618, 2012 WL 3139465, at *1 (S.D. W. Va. Aug. 1, 2012) (citing *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004)). In this case, Defendants' version of facts is in direct contradiction of Figures's complaint with respect to crucial details, making their motions to dismiss controverted.

of the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution ("Eighth Amendment"). *See Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2475 (2015). Regardless of which amendment applies, however, the elements necessary to state a prima facie case are essentially the same.

A pretrial detainee "must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 2473. To demonstrate a violation of the Eighth Amendment, a person convicted of crime must show that the defendant "inflicted unnecessary and wanton pain and suffering." *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir.1998) (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). This claim includes both an objective component, demonstrating that the force deployed was "sufficiently serious," *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996), and a subjective component which requires the inmate to show that the defendant demonstrated "wantonness in the infliction of pain." *Brooks v. Johnson*, 924 F.3d 104, 112 (4th Cir. 2019). The subjective component will generally turn on whether "the force applied was in a good faith effort to maintain or restore discipline," or was simply for the purpose of causing injury. *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir.1998).

Figures alleges that Defendants, acting concertedly and without provocation, picked him up by the legs and drove his head into the floor, knocking him unconscious. (ECF No. 2 at 5). Figures further alleges that when he awoke, Hale was pushing his head into the ground despite the fact that he was unresponsive and in restraints. (*Id.*). These allegations by Figures—that while he was neither resisting an order, nor presenting a threat, Defendants threw him headfirst to the ground and continued to push his head into the ground after he was rendered unconscious—are factually sufficient to state a prima facie claim of excessive force under either the Eighth or

Fourteenth Amendment. *See e.g. Carmona v. Bullard,* No. 3:18-CV-492-FDW, 2018 WL 5793156, at *3 (W.D.N.C. Nov. 5, 2018) (allowing claim that defendant threw inmate headfirst to ground, and later into cell to continue after initial screening); *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 99 (4th Cir. 2017) (where no justification present, Eighth Amendment claim alleging defendant repeatedly threw inmate against wall and floor of van permitted to proceed).

Defendants' motions for dismissal, by contrast, depict a different series of events. Defendants assert that Figures resisted an order to enter a temporary holding cell, while Figures states that, although he questioned the order, he complied with it. (ECF Nos. 2 at 5, 21, 25 at 2). Defendants further state that Figures not only refused to comply with an order, but attempted to strike Hale, necessitating the use of physical force to restrain him. (ECF Nos. 21, 25 at 2).

Defendants do not contest that the facts as alleged by Figures adequately state a claim of a constitutional violation; rather, they assert that his version of events is inaccurate, and under the facts as they actually transpired, no constitution violation occurred. Resolving this question in their favor would require the Court to accept Defendants' version of events, while rejecting Figures's allegations. Doing so in the context of considering a motion to dismiss violates the applicable standard of review. The relevant facts of whether Figures refused to comply with an order, and whether he actively resisted attempts to make him do so, are in dispute. As whether Defendants' use of force was excessive under either the Eighth or Fourteenth Amendment depends on the reasonableness of their actions, this issue cannot be decided in their favor given that facts central to the resolution of this case are contested. *See Raub v. Bowen*, 960 F. Supp. 2d 602, 608 n.8. Accordingly, the undersigned **FINDS** that Defendants'

24

motions to dismiss based on qualified immunity should be denied at this stage of the litigation.

## IV.    <u>Proposal and Recommendations</u>

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the following findings and **RECOMMENDS** that Defendants' motions for dismissal, (ECF Nos. 20, 24), be, **GRANTED** in part, and **DENIED**, in part. The motions for dismissal should be **GRANTED** as to Plaintiff's claims for monetary damages against the Defendants' in their official capacity, and **DENIED** as to Plaintiff's remaining claims.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to

the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, and counsel of record.

**FILED:**  May 6, 2020

Cheryl A. Eifert
United States Magistrate Judge